OPINION OF THE COURT
Joel K. Asarch, J.
By petition verified on August 13, 2009, Vita E commenced a proceeding pursuant to article 81 of the Mental Hygiene Law *623 for the appointment of a guardian for her brother, Louis VE, an alleged incapacitated person. Following a hearing conducted herein, the court found Louis VE to be a person in need of a guardian, appointed his niece and nominee, Grace D., as the guardian for his personal needs, and his sister, Vita E, and Tammy R. Lawlor, Esq. as the coguardians for his property management by order and judgment dated May 24, 2010.
The written nomination by Louis VE, sworn to on October 21, 2009, and considered by the court pursuant to section 81.17 of the Mental Hygiene Law, specifically stated that
“Vita E is not to interfere with my personal needs guardian . . . [and] she is not to interfere with any aspect of my daily life. If Vita E oversteps her boundaries or causes trouble in my home Ufe I will request her removal from any and all aspects of my guardianship.”
Furthermore, the court suspended the health care proxy dated January 26, 2009 nominating Vita E as the health care agent of Louis VE, upon the qualification of the guardian for the personal needs appointed therein.
On February 12, 2011, Louis VE passed away at 86 years of age. It appears that the surviving family members agreed upon the selection of a funeral home to assist with the funeral arrangements and paid the sum of $3,200 on account of such services from the funds of Louis VE; however, Grace D. and Vita E apparently are at odds with regard to the final disposition of the remains.* Hence, the funeral home requested a court order directing the disposition and/or clarification as to which family member(s) had priority to make such decision. (See Fublic Health Law § 4201 [8].) On February 17, 2011, a hearing was conducted before the undersigned at which time the court heard from the guardian for the personal needs, Grace D., and the co-guardians for the property management, Vita E and Tammy R. Lawlor, Esq., respectively. At the conclusion of such hearing, the court issued a bench decision, and the within formal decision and order follows:
The law regarding “possession” of a dead body for preservation and burial expressly favors the surviving spouse, and subsequently the next of kin. (See Stahl v William Necker, Inc., 184 App Div 85 [1st Dept 1918].) The closer the degree of kin *624 ship that one maintains with the decedent, the higher the possessory right. (See Public Health Law § 4201 [2].) However, cases dealing with rights of sepulcher (and the descending priority of surviving family members to make such decisions) recognize that the testamentary wishes of the decedent regarding the disposition of his or her own remains are paramount. (Matter of Herskovits [Herman], 183 Misc 411 [Sup Ct, Queens County 1944].) It is only in the absence of this direction that the wishes of the family should be considered and heeded.
In this matter, Louis VE left no surviving spouse or issue. Therefore, his next of kin include his surviving siblings, Vita E and Olinda B. (second degree of kinship), and his niece, Grace D. (third degree of kinship).
At the hearing, Vita E testified that she and her sister, Olinda B., each desire to be cremated. She further testified that she wanted to cremate her brother’s remains, and transport the cremains to her bungalow in Vermont where she claims he experienced artistic and musical inspiration during various points in his life. Finally, she indicated that she wished for her ashes to be mixed with his after her passing. Vita E claims that she previously discussed her own cremation with her brother during his lifetime, and while he did not disapprove religiously or morally, she admitted that he never indicated that he wished to have his remains cremated. Although Olinda B. did not attend the hearing, Vita E represented that her sister did not object to the cremation of Louis VE
Grace D. testified that she desired that her uncle be buried as he intended in the catholic cemetery burial plot he purchased for himself some 35 years ago (a copy of such certificate with privilege of burial is attached hereto). She further testified that Louis VE was a religious man, who served as the choir director at a local church for several decades, and expected that he would be buried in the customary garb of a Knight of the Order of the Holy Sepulchre of which he was a member.
The court notes that the parents of Louis VP. and the predeceased brother of Louis VE (the father of Grace D.) were each buried as opposed to being cremated.
In this instance, the last will and testament of Louis VE does not indicate his desires with regard to his final resting place, but only mentions that his funeral costs be paid as an administrative expense prior to the distribution of his testamentary estate. Therefore, absent instructions to the contrary, his adult siblings, Vita E and Olinda B., would maintain statutory prior *625 ity over any other surviving heirs for determining the disposition of his remains. However, Louis VE left a clear indication as to his intended wishes with regard to final resting place, as he purchased a plot in the Cemetery of the Holy Rood, Westbury, New York on July 8, 1975, and maintains a privilege of burial therein. Further, such purchase consisted of both the plot fee and permanent care, indicating his intention that such plot eventually be utilized and perpetually tended. Accordingly, as Louis VE passed away before the guardians had the opportunity to permit him to participate in the creation of any funeral trust to be established for his benefit, the court must rely upon the manifestation of his wishes to be buried in the funeral plot that he specifically purchased for his benefit several decades prior.
Finally, the court notes that much of the concern voiced by Vita E is based upon her perception of the “unreasonable” expenses involved with a viewing and wake, a funeral mass and burial, and any gathering of family and friends thereafter. She focused repeatedly upon the more economical route of cremation and the sale of the unused burial plot to possibly offset other outstanding bills. However, as it appears that Louis VE was not embalmed following his demise, the only option available at this time is a direct burial at the cemetery — thereby ensuring that the total funeral charges associated therewith shall be limited. In view of the foregoing, the court grants the relief sought by Grace D., and directs that Louis VE be afforded a proper and dignified burial in the manner in which he intended.
Accordingly, upon all the prior pleadings and proceedings heretofore had herein, and the decision of the court as spread on the record on February 17, 2011, and after due deliberation, it is ordered, that the application of Grace D. is hereby granted to the extent set forth hereinbelow; and it is further ordered, that the remains of Louis VE shall be forthwith buried in the Cemetery of the Holy Rood, Westbury, New York, in the burial plot owned by him and located in section 16, range Y, plot No. 97, and the additional cost of same in the sum of $2,350 shall be paid by the coguardians for the property management (or either of them) from the funds of Louis VE by no later than February 25, 2011; and it is further ordered, that Grace D. shall arrange for the purchase of any religious burial garb and/or other ceremonial items typically utilized for the interment of a Knight of the Order of the Holy Sepulchre (or such other religious order of which Louis VE was a member), the cost of which shall *626 be paid by the coguardians for the property management (or either of them) from the funds of Louis VE by no later than February 25, 2011; and it is further ordered, that the coguardians for the property management shall pay the sum of $750 from the funds of Louis VE for the cost of an appropriate grave marker for such plot; and it is further ordered, that Tammy R. Lawlor, Esq. shall submit to the court a copy of the certificate of death of Louis VE within 10 days of the issuance thereof.

 Vita E desires that her brother be cremated and that she transport his cremains to her home in the State of Vermont. Grace D. desires that her uncle be buried in the cemetery plot which he purchased for himself in 1975.